Burket, J.
On the part of the plaintiff in error, the railroad company, it is claimed that at the time the goods were destroyed by fire, its liability as a common carrier had ceased, and its liability as warehouseman begun. On the part of defendant in error it is claimed that the liability of the railroad company at the time of the fire was that of common carrier, and that such liability continued until it notified defendant in error of the arrival of the goods, and until he had a reasonable time after receipt of such notice, and during business hours, for the inspection and removal of the same.
While transportation of personal property was carried on by means of stage coaches, and the like, the carrier was required to deliver the goods at the residence or place of business of the consignee, ' and his liability as carrier did not end until such delivery.
In maritime transportation, the rule is very general as well in this country as in England, that the liability of the carrier ceases upon the arrival and unloading of the goods at port of destination.
One strong, if not controlling, reason for this is that the revenue laws imposing duties upon imported goods require regulations which so far in *417 terfere with the- custody of the goods after arrival, as to deprive the carrier of full control, and therefore the liability of the carrier ceases, when the control of the revenue officer begins. Cope v. Cordova, 1 Rawle, 203. Hyde v. Trent and Mersey navigation Company, 5 T. R., 394; Chickering v. Fowler, 4 Pick., 371.
As to transportation by river or along the coast, in most of the early cases it was held that the liability of the carrier continued until the arrival of the goods and notice to the consignee with reasonable opportunity for the acceptance and removal of the goods. In some of the cases it was said that liability of the carrier could be ended only with the consent of the consignee, either given in fact or implied by his acts. Ostrander v. Brown and Stafford, 15 Johns, 39; Cope v. Cordova, 1 Rawl., 203; Hemphill v. Chenie, 6 Watts & Sargent, 62; Hill v. Humphreys, 5 Watts & Sargent, 123. When railroads came into general use, and absorbed the bulk of the carrying trade in this country, the courts in some of the states followed the rule in maritime transportation, and held that the liability of the carrier ended upon the arrival of the goods, and unloading them upon a platform or placing them in a warehouse. The courts of other states, for reasons widely differing, followed the rule applied to transportation by river, and held that the liability of the carrier by rail continued after the arrival of the goods until notice to the consignee and reasonable opportunity thereafter for the removal of the same. In some of the states, as New York, Tennessee, California, and perhaps others, this rule has been adopted by statute.
A list of the states not requiring notice, is found in 2 Am. and. Eng. Ency. of Law, 892, with citation *418 of eases, and a list of the states requiring notice, is found on page 893, with like citations.
In this state we have no statute requiring notice to the consignee for the purpose of ending’ the carrier’s liability, unless section 3227, Revised Statutes, would bear such construction. Under that section the carrier cannot charge for storage until ten days after notice, and it might be claimed, as has been held in some cases, that the liability as carrier continues, until the right to charge storage begins. But as the effect of this section was not argued by counsel on either side, we express no opinion as to its construction, and dispose of the case on principles of the common law.
The question has not been passed upon by this court, and therefore we are at liberty to follow that line of decision, which, in our opinion, will best meet the wants of the present course of business.
The court of common pleas found as a fact, that it has always been the custom of defendant below, to give notice of the arrival of goods, and we think that, this is the general, if not the universal custom in this state. Consignments arrive daily and at all hours, both day and night, often hundreds, to as many consignees in a single day, and to require all to be on the lookout, and make inquiry of the ag’ent, would be impracticable, and would seriously retard business.
The custom of sending notice to the consignee sprung out of the necessity of business, and is for the benefit and convenience of both parties. The railroads established this custom, the public acquiesced therein, and the law adapts itself thereto.
As therefore the present course of business is to give notice to the consig-nee of the arrival of his *419 goods, it follows as a necessary sequence, that the carrier must hold and care' for the goods until the consignee has reasonable time after receipt of notice, to inspect and remove them.
After carefully considering all the cases, and the reasons stated in each, the court is unanimous in the opinion, that in the absence of both contract and statute to the contrary, sound policy, and the present course of business, require that the carrier should give notice to the consignee of the arrival of his goods, and that the consignee is entitled to a reasonable time during business hours after receipt of notice, to inspect and remove the goods, unless he is unknown, absent, or cannot be found, in which case the goods may be stored.
In this case the notice was received at six o’clock in the evening, after the close of business hours, and the goods were consumed by fire at about two o’clock the same night. It is therefore clear that the liability of the railroad company, as carrier, had not ended when the goods were burned.
The judgment of the court of common pleas is therefore right.

Judgment affirmed.